IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BENJAMIN JAMES GEORGE**, | Case No. 6:20-cv-01976-IM |
| Petitioner, | **OPINION AND ORDER** |
| v. | |
| **JOSHUA HIGHBERGER**, Superintendent, Oregon State Correctional Institution, | |
| Respondent. | |

**IMMERGUT, District Judge.**

Petitioner Benjamin James George ("Petitioner"), an individual in custody at Oregon State Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254 alleging violation of his constitutional right to the effective assistance of counsel. Respondent argues that the state court's rejection of Petitioner's claims is entitled to deference and that his petition should be denied. Although the Court issued two orders to show cause and granted multiple extensions of time, Petitioner did not file a brief in support of his petition or otherwise

PAGE 1 – OPINION AND ORDER

respond to Respondent's arguments. For the reasons set forth below, this Court agrees that it must defer to the state court's decision denying Petitioner's claims and thus denies habeas relief.

## BACKGROUND

In June 2010, a Jackson County grand jury returned an indictment charging Petitioner with Assault in the First Degree in connection with an incident in which Petitioner caused serious injuries to "K.L.", his girlfriend's two-year-old daughter.[1] (Resp't Exs. 102 at 3, 103 at 9-11.[2]) K.L.'s injuries were severe, requiring, among other things, the removal of both sides of her skull to relieve pressure on her brain.[3] (Resp't Ex. 103 at 75-77.) After K.L.'s treating physicians

---

[1] The State read into the record the following summary of the incident, as set forth in the autopsy report:

> Upon interviewing [Petitioner], he initially gave several bogus versions of how the child was injured on playground equipment, but after these were rejected, finally told what is believed to be closer to the true scenario. This incident occurred in the home shared by the mother and [Petitioner]. [Petitioner], weighing 230 pounds, claimed to demonstrate full ultimate wrestling fight moves on [K.L.]. He threw his entire weight onto her torso form pressing across her neck, and held this move in his estimate for one to two minutes. Then when she was found unconscious, he decided to make the incident look more like an accident and took [K.L.] by one arm and one leg and tossed — his word was hurled — her onto the bed, where she then bounced into the wall. [K.L.] then developed a seizure like activity and [Petitioner] placed his thumb into the corner of her mouth causing bruising to the jaw and chin area. She began to vomit. Then, still attempting to find a legitimate excuse to tell the mother, he claimed to take a blood glucose reading that was reported to be drastically high, at which time he called the mother, and she rushed home. This version of seizure, vomiting, hyperglycemia was provided to the hospital, and the assault report to the Medford Police . . . was delayed until after diagnostic scans.

(Resp't Exs (ECF Nos. 20-25), Ex. 103 at 10-11.)

[2] When citing to Respondent's Exhibits, the Court refers to the page numbers located in the lower right corner of each exhibit.

[3] In addition to the brain injury, the medical examiner noted that K.L. had bruises all over her body, abdominal injuries consistent with being "[s]tomp[ed], str[uck], hit, or . . . thrown on top of something[,]" and chest injuries consistent with separate "blow[s]" to the chest. (Resp't Ex. 104 at 16-19, 23-29.) The medical examiner further noted that K.L. had hemorrhaging in

PAGE 2 – OPINION AND ORDER

determined there was little hope that she would recover, K.L.'s mother agreed to remove her from life support. (*Id.* at 77.) K.L. died on June 15, 2010. (*Id.* at 77.) A week later, on June 22, 2010, the grand jury amended the indictment to include one count each of Murder and Murder by Abuse. (Resp't Ex. 102 at 1-2.)

Petitioner proceeded to a bench trial in June 2011. Several witnesses testified, including K.L.'s mother and other family members, the medical examiner, law enforcement officers. and Petitioner's psychological expert, Dr. Cooley, who believed Petitioner was "operating under a less than culpable mental state" when he inflicted K.L.'s injuries. (Resp't Ex. 105 at 31.) The trial court ultimately found Petitioner guilty of murder by abuse and first-degree assault, but not guilty of murder. (Resp't Exs. 101; 105 at 210.) The trial court then imposed a life sentence with the possibility of parole after 300 months. (Resp't Ex. 101.)

Petitioner filed a direct appeal, raising claims that are not relevant to the instant proceeding. (Resp't Exs. 106, 108.) The Oregon Court of Appeals affirmed without opinion, *State v. George*, 258 Or. App. 682 (2013), and the Oregon Supreme Court denied review, *State v. George*, 354 Or. 490 (2013).

Petitioner next sought postconviction relief ("PCR"). (Resp't Ex. 114.) In his counseled amended PCR petition, Petitioner raised a single claim for relief, with numerous subparts, based on the ineffective assistance of counsel. (Resp't Ex. 116 at 2-5.) Among other things, Petitioner alleged that his trial attorney "failed to investigate, research, and litigate a motion to suppress petitioner's interview with Detective Ivens" and "failed to consult and call an expert regarding

---

both eyes consistent with "a whiplash-type injury, a shaking-type injury, or just hitting something hard and having the head turn at the same time." (*Id.* at 34-35.) The medical examiner ultimately determined that the head, neck, and chest injuries caused K.L.'s death and ruled it a homicide. (*Id.* at 39.)

PAGE 3 – OPINION AND ORDER

false confessions to testify at petitioner's motion to suppress hearing and trial." (*Id.* at 3-4.) After a trial—during which the parties submitted extensive documentary evidence, and Detective Ivens and the underlying prosecutor both testified—the PCR court issued a written judgment denying relief. (Resp't Ex. 154 at 3.)

Petitioner appealed, assigning as error the PCR court's denial of the two ineffective assistance claims outlined above. (Resp't Ex. 155 at 28, 42.) The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. (Resp't Exs. 157, 158.)

On November 5, 2020, Petitioner filed a Petition for Writ of Habeas Corpus in this Court, presenting a single ground for relief:

> **Ground One:** Trial counsel deprived Petitioner of effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution.
>
> **Supporting Facts:** Trial counsel deprived Petitioner of effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution when he: (i) failed to investigate, research, and litigate a motion to suppress Petitioner's interview with Detective Ivens that was conducted without prior *Miranda* warnings and was conducted pursuant to coercive techniques that rendered Petitioner's statements unreliable; and/or (ii) [failed to] consult and call an expert regarding false confessions to testify at Petitioner's motion to suppress hearing and trial."

(Pet. at 5.) Respondent urges this Court to deny habeas relief, arguing that the PCR court's denial of Petitioner's ineffectiveness claims was not objectively unreasonable and is entitled to deference. (Resp. to Pet. (ECF No. 17), at 2.)

## DISCUSSION

As noted above, Petitioner renews his claims that trial counsel was ineffective in failing to move to suppress his interview with Detective Ivens and failing to retain an expert on false confessions. Petitioner did not, however, file a supporting brief or otherwise respond to Respondent's arguments that this Court must defer to the state PCR court's decisions denying

PAGE 4 – OPINION AND ORDER

relief.[4] Petitioner thus has failed to sustain his burden of demonstrating that he is entitled to habeas relief. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (recognizing that a habeas petitioner carries the burden of proving his case). This Court nevertheless has thoroughly reviewed the existing record and concludes that habeas relief is not warranted in this case

I.     **LEGAL STANDARDS**

A federal court may not grant habeas relief on any claim "adjudicated on the merits" in state court, unless the state court ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). A state-court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law occurs if the state court applies the correct legal principle to the facts of the case in an "objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam).

Pursuant to well-established Supreme Court precedent, a habeas petitioner alleging an ineffective assistance of counsel claim must show that (1) counsel's performance was deficient, and that (2) the deficient performance "prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, a petitioner "must show that counsel's

---

[4] This Court has twice ordered Petitioner to show cause in writing why he failed to file a supporting brief and whether he intended to do so. (ECF Nos. 31, 38) This Court also has granted Petitioner several lengthy extensions of time. (ECF Nos. 35, 37, 41.) To date, Petitioner has not filed a supporting brief, nor has he contacted the Court to request another extension of time after the briefing deadline expired on March 15, 2023.

PAGE 5 – OPINION AND ORDER

representations fell below an objective standard of reasonableness." *Id.* at 688. Such a showing requires a petitioner to overcome a strong presumption that the challenged conduct falls within the "wide range of reasonable professional assistance; that is the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (simplified). To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

## II.     ANALYSIS

### 1.     Trial Counsel's Failure to File a Motion to Suppress

Petitioner alleged during his PCR proceedings that trial counsel was deficient in failing to investigate, research, and file a motion to suppress Petitioner's interview with Detective Ivens based on a lack of *Miranda* warnings and an allegedly coercive atmosphere. In opposition, the State submitted, among other things, trial counsel's declaration explaining that although he generally did not file motions to suppress in a bench trial, he had considered doing so in Petitioner's case and had concluded after some investigation that a motion to suppress had little chance of success. (Resp't Ex. 149 at 2-3.) Trial counsel further attested that he had hoped to persuade the trial court that Petitioner was guilty of manslaughter rather than murder, and that "some of the best evidence" supporting such a finding "were the videos of [Petitioner's] interviews with Detective Ivens." (*Id.* at 3.) In trial counsel's view, the videos "showed that [Petitioner] had been too rough with [K.L.], and had gone too far in roughing around with her, but . . . had called [K.L.'s] mother quickly, after noticing problems, and pretty promptly took [K.L.] to Providence Medical Center" instead of fleeing. (*Id.*)

In a written judgment, the PCR court rejected Petitioner's claim, noting that it "believe[d] that Miranda was given, although not on the [video] recording."[5] (Resp't Ex. 154 at 3.) The PCR court further explained that:

> The quandary for trial attorney was the mixture of incriminating and exculpatory statements made to the detective. Most of the statements as to what the pet[itioner] physically did to the child are incriminating and show an amazing lack of understanding of "play." But pet[itioner]'s statements as to how the child reacted, how they had safely played in the past, what he observed of her reactions, what he thought and intended were largely exculpatory—going to the defense argument about mental state. To get those in, the defense had to allow the rest of the statements. Without those exculpatory statements, the court would have the autopsy report, the observations from the hospital, pet[itioner]'s early lies to the detective, the complaints of prior abuse, [court-ordered] parenting classes, . . . . and nothing else to try to mitigate the death of a 2 ½ year old child. That would not have helped the pet[itioner]. Also, [Petitioner's psychological expert] used those statements in rendering his opinion as to pet[itioner]'s mental state. A hard call for the defense, but a reasonable one.

(*Id.*) The PCR court thus determined that trial counsel was not ineffective in declining to file a motion to suppress Petitioner's interview with Detective Ivens.

As the PCR court noted, it was undisputed that K.L. died "as a result of the injuries sustained on the day she was taken to the hospital" and that "Petitioner caused those injuries." (*Id.*) Therefore, "[t]he only defenses . . . possible were what Pet[itioner] did to cause those injuries and what his mental state was at the time." (*Id.*) Petitioner's interview with Detective Ivens included "some of the best evidence" supporting a diminished capacity defense, and moving to suppress such evidence, if successful, would have hobbled trial counsel's efforts to persuade the trial court to find Petitioner guilty of manslaughter rather than murder. The record thus makes clear that trial counsel's decision was a strategic one, and "strategic choices made

---

[5] Detective Ivens testified at PCR trial that unbeknownst to her, she read Petitioner his *Miranda* rights after the video equipment recording the interview had shut off. (Resp't Ex. 153 at 15-18.) Petitioner does not rebut this evidence.

PAGE 7 – OPINION AND ORDER

after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Petitioner also fails to establish prejudice. Accordingly, the PCR court's determination that trial counsel was not ineffective for declining to file a motion to suppress was not objectively unreasonable and is entitled to deference.

      **2.**      **Trial Counsel's Failure to Retain an Expert on False Confessions**

Petitioner also alleged during his PCR proceedings that trial counsel was ineffective in failing to consult and retain an expert on "false confessions" to testify at trial. (Resp't Ex. 154 at 3.) Specifically, Petitioner argued that trial counsel should have retained Dr. Reisberg, a research psychologist and memory expert, who would have testified "that numerous factors can increase the risk of false confessions[,]" and that "the duration and conduct of the interview [with Detective Ivens] raise[d] grave concerns for a false confession." (Resp't Ex. 117 at 42-43.)

The PCR court rejected this claim, finding that although Dr. Reisberg, "would have testified that the confession could have been false," he was "unable to say that it was" false. (*Id.*) The PCR further noted that "[a] more basic question arises as to what [Petitioner] means by 'confession[,]'" explaining:

> Petitioner gave numerous accounts of what happened. Some he later admitted were lies. Some did not at all explain the injuries (diabetes for example). What he finally admitted that he did was consistent with the injuries found in the autopsy. A court was not likely to disbelieve those consistent "confessions." Often, Pet[itioner]'s statements were consistent as to the physical cause of the injuries but did not admit any intent to do harm nor any behavior that he and the child had often engaged in without harm. It was not inadequate representation not to call a witness such as Dr. Reisberg.

(*Id.*)

The PCR court's rejection of this claim was not objectively unreasonable. As the PCR court explained, Petitioner gave several differing accounts of what happened to K.L. before settling on an account that was consistent with the injuries documented by the medical examiner.

PAGE 8 – OPINION AND ORDER

It is unlikely that the trial court would have discredited these consistent statements as "false," even if Dr. Reisberg had testified that the circumstances of Petitioner's interview with Detective Ivens were ripe to produce a false confession. Moreover, as explained above, Petitioner made several statements during the interview that supported the defense theory of the case—that Petitioner did not and could not have formed the requisite intent to commit murder—and such statements were crucial to trial counsel's efforts to persuade the trial court to convict on a lesser offense. Indeed, trial counsel retained Dr. Cooley, a qualified psychological expert, who advanced a diminished capacity defense based, in part, on Petitioner's interview with Detective Ivens. (Resp't Ex. 149 at 3.) This was not ineffective. *See Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (explaining that "[t]he selection of an expert witness is a paradigmatic example of the type of strategic choice that, when made after thorough investigation of the law and facts, is virtually unchallengeable") (simplified). Petitioner also fails to establish prejudice. Accordingly, the PCR court's determination that trial counsel was not ineffective for failing to retain an expert on false confessions was not objectively unreasonable and is entitled to deference.

## CONCLUSION

Based on the foregoing, the Court DENIES Petition for Writ of Habeas Corpus (ECF No. 2), and DISMISSES this proceeding, with prejudice. Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore the Court DENIES a Certificate of Appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

DATED this __7th__ day of ~~June~~ July, 2023.

Karin J. Immergut
United States District Judge

PAGE 9 – OPINION AND ORDER